UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
WILLIAM MAKRANSKY,

                         Plaintiff,


         -against-                                    <u>MEMORANDUM & ORDER</u>
                                                      15-CV-1259(JS)
JEH JOHNSON, Secretary, Department of
Homeland Security; LEON RODRIGUEZ,
Director, U.S. Citizenship and
Immigration Services; JEAN THARPE,
Field Office Director Vermont Field
Office, USCIS; ROBERT COWAN, Director,
National Benefits Center, Lee's Summit,
MO, USCIS; and ERIC H. HOLDER, U.S.
Attorney General, U.S. Department of
Justice,

                         Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:       Nicklaus Misiti, Esq.
                     Misiti Global, PLLC
                     40 Wall Street, 28th Floor
                     New York, New York 10005

For Defendants:      Margaret M. Kolbe, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201


SEYBERT, District Judge:

         William  Makransky  ("Plaintiff"),  a  convicted  sex

offender, filed a visa petition on behalf of his wife, a foreign

national.   When  the  petition  was  denied,  Plaintiff  sued  the

director of the United States Citizenship and Immigration Services

("USCIS") and other federal officials asserting violations of his

constitutional  rights  and  the  Administrative  Procedure  Act

("APA"), 5 U.S.C. § 500 et seq. Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.[1] (Docket Entry 12.) For the following reasons, Defendants' motion is GRANTED.

BACKGROUND[2]

Plaintiff, a United States citizen, is married to Gina Makransky, a foreign national. (Compl., Docket Entry 1, ¶¶ 19, 25.) In 1999, Plaintiff was convicted of "specified offenses" against a minor--namely, aggravated sexual battery, sexual battery, and contributing to the delinquency of a child. (Compl. ¶¶ 7-8.) These convictions barred him from obtaining a visa on his wife's behalf. (Compl. ¶ 7.)

Seven years after the convictions, Congress passed the Adam Walsh Child Protection and Safety Act ("AWA"), which amended the Immigration Nationality Act ("INA") to bar a citizen from filing a visa petition on behalf of his or her spouse if that

---

[1] Defendants alternatively moved for summary judgment. Based on this Court's Individual Practices, a party must first move for a pre-motion conference. This issue, however, is moot, as the Court finds that the Complaint must be dismissed for Plaintiff's failure to state a claim.

[2] The facts alleged in the Complaint are presumed to be true for the purposes of this Memorandum and Order. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks and citation omitted)).

citizen had "been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the [intended beneficiary]." (Compl. ¶¶ 34-35 (citing AWA, Pub. L. No. 109-248, 120 Stat. 587 (2006); quoting 8 U.S.C. § 1154(a)(1)(A)(viii)).)

To clarify certain issues regarding the AWA, the Secretary of the Department of Homeland Security issued a pair of guidance memoranda. (Aytes Memo, Compl. Ex. 1, Docket Entry 1-3; Neufeld Memo, Compl. Ex. 2, Docket Entry 1-4.)[3] First, the Aytes Memo stated that the petitioner was required to "clearly demonstrate[], beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies)." (Aytes Memo at 6.) Second, the Neufeld Memo specified that AWA approvals "should be rare" because of "the nature and severity of many of the underlying offenses and the intent of the AWA." (Neufeld Memo at 3 (emphasis in original).) The Neufeld Memo further specified that "[a]s a practical matter . . . we need to accept the petition and conduct the necessary analysis to determine whether the AWA provisions apply." (Neufeld Memo at 5.) Plaintiff contends that neither the Aytes Memo nor

---

[3] For the purposes of this Memorandum and Order, the Court will use the page numbers generated by the Electronic Case Filing System when referring to the exhibits in the Complaint.

the Neufeld Memo went through notice and comment procedures. (Compl. ¶¶ 37, 43-44.)

In 2010 and then again in 2013, Plaintiff filed an I-130 immigrant visa petition to establish the United States as his wife's lawful permanent residence, the first step in obtaining citizenship. (Compl. ¶¶ 29, 31.) The USCIC, "in its exercise of sole and unreviewable discretion," denied each petition, basing its decision on the AWA and Plaintiff's failure to provide sufficient evidence to meet the burden of proof. (Dec. 2014 USCIS Not. of Decision, Compl. Ex. 4, Docket Entry 1-6, at 3; see also Dec. 2011 USCIS Not. of Decision, Compl. Ex. 3, Docket Entry 1-5, at 6.)

On March 11, 2015, this action followed. Plaintiff asserts six theories of recovery. First, the USCIS applied a 2006 law to his 1999 convictions in violation of the Ex Post Facto Clause of the Constitution ("Count I"). (Compl. ¶¶ 49-62.) Second, the USCIS denied Plaintiff the fundamental right to marry in violation of the Fifth Amendment ("Count II"). (Compl. ¶¶ 63-77.) Third, the USCIS imposed excessive punishment by denying his wife's visa petition in violation of the Fifth and Eighth Amendments ("Count III"). (Compl. ¶¶ 78-84.) Fourth, the USCIS exceeded its statutory authority (i.e., ultra vires) by adjudicating already-filed petitions, instituting a presumptive denial of petitions, and establishing a proof "beyond a reasonable

doubt" standard ("Counts IV and V"). (Compl. ¶¶ 85-92, 109-22.) Fifth, the USCIS violated the APA because its decision to deny Plaintiff's petition was "arbitrary and capricious" ("Count V"). (Compl. ¶¶ 93-100.) Sixth, the USCIS contravened the APA's notice-and-comment procedures ("Count VII"). (Compl. ¶¶ 101-08.)

Defendants now move to dismiss the Complaint, arguing that Plaintiff has failed to state a claim. (Docket Entry 12.) Yet Defendants' initial argument is that the INA bars judicial review of any discretionary decision made by the USCIS, which includes the determination of whether a "citizen poses no risk" to the intended beneficiary. (Defs.' Br., Docket Entry 12-1, at 5-6.) In opposition, Plaintiff asserts that the decision to apply the AWA to a petitioner does not require any discretion and thus judicial review is permitted. (Pl.'s Br., Docket Entry 15, at 4-11.)

## DISCUSSION

I.  Legal Standards

    A.  Legal Standard for a Rule 12(b)(1) Motion

    A case is properly dismissed for lack of subject matter jurisdiction if the court "'lacks the statutory or constitutional power to adjudicate it.'" Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L., 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). In resolving a motion under 12(b)(1), the Court may consider

5

affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  See Makarova, 201 F.3d at 113 (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)). The Court must accept the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiffs because subject matter jurisdiction must be shown affirmatively.  See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted).

B.   Legal Standard for a Rule 12(b)(6) Motion

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Although the Court must accept all allegations in the Amended Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted).  Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

## II. Subject Matter Jurisdiction

The INA provides the right for a citizen to file a visa petition on behalf of his or her spouse. 8 U.S.C. § 1154(a)(1)(A)(i). In 2006, Congress amended the INA through the passage of the AWA, named after a young boy who was abducted and murdered. Pub. L. No. 109-248, 120 Stat. 587 (2006). The purpose of the AWA was "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Id. To achieve this goal, the AWA barred a citizen from filing a visa petition on behalf of his or her

spouse if that citizen had "been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the [intended beneficiary]."[4]  8 U.S.C. § 1154(a)(1)(A)(viii).  Particularly, the statute provides the following:

> (a) Petitioning Procedure
>
> (1)(A)(i) Except as provided in clause (viii), any citizen of the United States claiming that an alien is entitled to classification by reason of a relationship described in paragraph (1), (3), or (4) of section 1153(a) of this title or to an immediate relative status under section 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification.
>
> * * *
>
> (viii)(I) Clause (i) shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, <u>in the Secretary's sole and unreviewable discretion</u>,[5] determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed.

8 U.S.C. § 1154(a)(1)(A)(i), (viii) (emphasis added).

---

[4] A "specified offense against a minor" includes all offenses by child predators.  <u>See</u> 42 U.S.C. § 16911(7).

[5] The Secretary of the Department of Homeland Security is permitted to delegate this discretionary authority to the appropriate agency, such as the USCIS.  8 C.F.R. § 2.1.

Under Section 1252 of Title 8, the INA bars judicial review of any "decision or action" made under the USCIS's discretion:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> * * *
>
> (ii) <u>any other decision or action</u> of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter[6] to be <u>in the discretion of the Attorney General or the Secretary of Homeland Security</u>, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Thus, the Section 1252 prohibits judicial review of the USCIS's "no risk" determination.

But here, the "no risk" determination is not under attack. (<u>See generally</u> Compl.) Instead, Plaintiff makes a collateral challenge to the constitutionality of the AWA, which, he argues, is not barred from judicial review. (Pl.'s Br. at 5-7.)

---

[6] Although not explicitly enumerated, Section 1154 is included within "this subchapter." <u>Guyadin v. Gonzales</u>, 449 F.3d 465, 468 (2d Cir. 2006) ("The phrase 'this subchapter' refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381.").

District courts have had competing interpretations on this issue. Under one reading, district courts lack subject matter jurisdiction to review any constitutional challenges or questions of law related to the "no risk" determination. Chan v. U.S. Citizenship and Immigr. Servs., --- F. Supp. 3d ----, 2015 WL 6449335, at *8 (W.D.N.C. 2015), appeal docketed, No. 15-2529 (4th Cir. Dec. 10, 2015); Bittinger v. Johnson, No. 14-CV-1560, 2015 WL 3842649, at *3 (M.D. Pa. June 22, 2015); Gebhardt v. Johnson, No. 14-CV-2277, at *14 (C.D. Cal. May 11, 2015); Bremer v. Johnson, No. 13-CV-1226, 2014 WL 7238064, at *3-4 (W.D. Mo. Dec. 17, 2014); Bains v. United States, No. 13-CV-1014, 2014 WL 3389117, at *3 (N.D. Ohio July 9, 2014); Beeman v. Napolitano, No. 10-CV-0803, 2011 WL 1897931, at *4 (D. Or. May 17, 2011). By contrast, others courts have permitted judicial review of any collateral challenges.[7] Struniak v. Lynch, --- F. Supp. 3d ----, 2016 WL 393953, at *9 (E.D. Va. 2016); Suhail v. U.S. Att'y Gen., No. 15-CV-12595, 2015 WL 7016340, at *4 (E.D. Mich. Nov. 12, 2015); Burbank v. Johnson, No. 14-CV-0292, 2015 WL 4591643, at *5 (E.D. Wash. July 29, 2015), appeal docketed, No. 15-35760 (9th Cir. Sept. 29, 2015); Bakran v. Johnson, No. 15-CV-0127, 2015 WL 3631746, at *4 (E.D. Pa. June 11, 2015).

---

[7] Another case on this issue, Phelps v. Lynch, No. 15-CV-01405, is currently pending in U.S. District Court, District of Colorado.

After considering both interpretations, this Court concludes that it has subject matter jurisdiction to hear Plaintiff's claims. In <u>Bakran</u>, for example, the United States District Court for the Eastern District of Pennsylvania determined that the "INA's jurisdiction stripping provision" did not bar judicial review because the claims did not challenge the USCIS's "no risk" determination. <u>Bakran</u>, 2015 WL 3631746 at *4. Parsing the language of Section 1154, the <u>Bakran</u> court determined that Section 1154 asks two questions: "first, whether the petitioner has been convicted of a qualifying crime and, second, whether the petitioner has proven that he poses no risk to the beneficiary of the petition." <u>Id.</u> at *3.[8]

Further, the circumstances in <u>Burbank</u> are virtually identical to the ones here. <u>Burbank</u>, 2015 WL 4591643 at *1. In both cases, a convicted sex offender filed an unsuccessful visa petition on behalf of his foreign spouse and then leveled a number of claims against the USCIS based on the <u>Ex Post Facto</u> Clause, various violations of the APA, and so on. <u>Id.</u> Critically, the <u>Burbank</u> plaintiff challenged the USCIS's application of the AWA, not the USCIS's "no risk" determination. <u>Id.</u> at *3. On this basis, the Eastern District of Washington determined that it had

---

[8] <u>Cf. Chan</u>, 2015 WL 6449335 at *5 (referencing Fourth Circuit case law that rejected claims that plainly "attempt to bypass the reviewability exception in the APA").

subject matter jurisdiction to reach the merits of the case.  Id. at *5.  Ultimately, Burbank was animated by the same rationale that drove Bakran: Yes, the statute provides the USCIS with discretion on the "no risk" determination, but no, that leeway does not apply to the first question.  Id. at *4.

Defendants, relying on Shabaj v. Holder, 718 F.3d 48 (2d Cir. 2013), challenge this conclusion.  (Defs.' Br. at 5-6.)  But Shabaj supports Plaintiff, not Defendants.  Shabaj, 718 F.3d at 51.  In that case, the Second Circuit analyzed a discretionary hardship waiver under Section 1182(i).  Id.  Because Section 1252(a)(2)(B) bars judicial review for discretionary determinations, the result was straightforward: The Second Circuit lacked jurisdiction to review the claim.  Id.  Here, however, Plaintiff is challenging the USCIS's decision to apply the AWA, not the USCIS's discretionary "no risk" determination.  See Struniak, 2016 WL 393953 at *9 ("[T]he decision to apply the AWA to petitioners . . . who are petitioning on behalf of an adult beneficiary is an analytically prior legal question that is not specified as falling within the discretion of the Secretary of Homeland Security.").

Congress, moreover, has expressed a "strong presumption" for judicial review of administration action.  Burbank, 2015 WL 4591643 at *2 (internal quotation marks and citation omitted).  For instance, the Supreme Court recognized this presumption in

McNary v. Haitian Refugee Ctr., Inc. 498 U.S. 479, 111 S. Ct. 888, 112 L. Ed. 2d 1005 (1991).[9] There, the relevant statute was Section 210(e)(1) of the INA, which precluded judicial review "of a determination respecting an application" for Special Agricultural Workers status. Id. at 491-92, 111 S. Ct. at 896 (emphasis added). Critically, the word "determination" suggested a "single act rather than a group of decisions or a practice or procedure employed in making decisions." Id. at 492, 111 S. Ct. at 896. On that basis, the Supreme Court found that Section 210(e)(1) did not bar judicial review for any challenges to agency practices and procedures. Id. at 494, 111 S. Ct. at 897, quoted in, Burbank, 2015 WL 4591643 at *4. So too here. Plaintiff is not challenging the "no risk" determination; rather, he is making "general collateral challenges to unconstitutional practices and policies used by the [USCIS]." Id. at 492, 111 S. Ct. at 896.

All in all, Defendants' interpretation of Section 1154 would create a situation that Congress could not have intended: Plaintiff would be "left without a forum." (See Pl.'s Br. at 10.)

---

[9] In Bremer, the Western District of Missouri argues that McNary does not offer any support, in part, because "§ 1252(a)(2) was enacted in 1996, several years after the Supreme Court issued the McNary decision." Bremer, 2014 WL 7238064 at *4. But the Supreme Court has repeatedly acknowledged Congress's "'strong presumption'" for judicial review. Traynor v. Turnage, 485 U.S. 535, 542, 108 S. Ct. 1372, 1378, 99 L. Ed. 2d 618 (1988) (quoting Bowen v. Mich. Acad. of Fam. Physicians, 476 U.S. 667, 670, 106 S. Ct. 2133, 2135, 90 L. Ed. 2d 623 (1986)).

Particularly, Section 1252 permits judicial review only for orders of removal, which would bar Plaintiff from petitioning to the Second Circuit for review. See 8 U.S.C. § 1252(a)(2)(D); Green v. Napolitano, 627 F.3d 1341, 1346 (10th Cir. 2010) (observing that Section 1252(a)(2)(D) "allows judicial review over constitutional and legal challenges only when raised on appeal of a final order of removal") (internal quotation marks and citation omitted).  But Congress favors judicial review of administrative action, and as the Supreme Court observed, "it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review." McNary, 498 U.S. at 496, 111 S. Ct. at 898; Struniak, 2016 WL 393953 at *9 ("The Supreme Court in McNary explicitly noted that when Congress wants to preclude judicial review of all legal questions it knows what language will accomplish that desired goal." (emphasis in original)).  Thus, this Court finds that Plaintiff has established subject matter jurisdiction and will address Defendants' Rule 12(b)(6) arguments.

III. Ex Post Facto Application

Plaintiff has not plausibly alleged a claim under the Ex Post Facto Clause.  As an initial matter, statutes are presumed be applied prospectively, not retroactively.  See, e.g., Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S. Ct. 1483, 1497, 128 L. Ed. 2d 229 (1994).  In an Ex Post Facto challenge, the Court engages in a two-step inquiry. Doe v. Pataki, 120 F.3d 1263, 1274

(2d Cir. 1997). First, the Court asks whether Congress intended for the statute to be civil. Id. If so, the Court then considers whether the punishment is "so punitive in form and effect as to render [it] criminal despite Congress' intent to the contrary." Id. (emphasis, internal quotation marks, and citation omitted).

Starting with the first step, Congress intended for the AWA to be "a civil matter to prevent future additional sex offenses against children." Suhail, 2015 WL 7016340 at *9. The AWA, recall, was designed "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." AWA, Pub. L. No. 109-248, 120 Stat. 587 (2006). Next, under the second step, it is clear that the AWA "address[es] dangers that arise postenactment" and thus "do[es] not operate retroactively." Cf. Vartelas v. Holder, --- U.S. ----, 132 S. Ct. 1479, 1489 n.7, 182 L. Ed. 2d 473 (2012). Accord Smith v. Doe, 538 U.S. 84, 103, 123 S. Ct. 1140, 1153, 155 L. Ed. 2d 164 (2003) ("The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences."). In fact, Plaintiff's Complaint cites Matter of Jackson, which stands for the proposition that the AWA does not have an "impermissible retroactive effect" when applied to convictions that occurred before its enactment.

(Compl. ¶ 47 (citing <u>Matter of Jackson</u>, 26 I. & N. Dec. 314, at *4 (BIA 2014).)  Thus, Count I is DISMISSED WITH PREJUDICE.

IV.  <u>Due Process Clause</u>

Nor has Plaintiff plausibly alleged a due process violation.  Plaintiff, to be sure, has a constitutional right to marry--and he has done just that.  (<u>See, e.g.</u>, Compl. ¶ 25.)  But what he does not have is a constitutional right to receive a visa for his wife.  <u>Bangura v. Hansen</u>, 434 F.3d 487, 496 (6th Cir. 2006) ("[T]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in the country." (internal quotation marks and citation omitted)); <u>see also</u> <u>Burrafato v. U.S. Dep't of State</u>, 523 F.2d 554, 555 (2d Cir. 1975) (finding that the denial of a visa application did not violate any constitutional rights).[10]  Thus, Count II is DISMISSED WITH PREJUDICE.

---

[10] Plaintiff cites <u>Kerry v. Din</u>, --- U.S. ----, 135 S. Ct. 2128, 192 L. Ed. 2d 183 (2015), and <u>Obergefell v. Hodges</u>, --- U.S. ----, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015), to support the proposition that he has a constitutional right, as a U.S. citizen, to petition on behalf of his wife.  (<u>See, e.g.</u>, Pl.'s Br. at 11, 17.)  But those cases hold no such thing.  <u>See</u> <u>Kerry</u>, 135 S. Ct. at 2135 (stating that "a long practice of regulating spousal immigration precludes [a wife's] claim that the denial of [her husband's] visa application has deprived her of a fundamental liberty interest"); <u>Obergefell</u>, 135 S. Ct. at 2607 (holding that "same-sex couples may exercise the fundamental right to marry in all States").

## V.  Excessive Punishment

Plaintiff's excessive punishment claim fails for the same reasons his Ex Post Facto challenge fails. Simply put, the AWA is "not punitive, [so] it follows that the law is not a 'cruel and unusual punishment' in violation of the Eighth Amendment." See Doe v. Miller, 405 F.3d 700, 723 n.6 (8th Cir. 2005). Thus, Count III is DISMISSED WITH PREJUDICE.

## VI.  Ultra Vires Interpretation of the AWA

Plaintiff has failed to assert sufficient facts to support his allegation that the USCIS surpassed its statutory authority. As noted at the outset, Plaintiff claims that the USCIS acted ultra vires when it adjudicated already-filed petitions, instituted a presumptive denial of petitions, and established a proof "beyond a reasonable doubt" standard. (Compl. ¶¶ 85-92, 109-22.) To determine whether an agency acted ultra vires, the Court must follow the two-step Chevron analysis. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter . . . ." Id. Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on

a permissible construction of the statute." Id. at 843, 104 S. Ct. at 2782.

Even if the AWA is deemed to be ambiguous under Chevron's first step, the Court concludes that the Aytes and Neufeld Memos are permissible interpretations of the statute. On adjudicating already-filed petitions, it is reasonable for the USCIS to "conduct the necessary analysis to determine whether the AWA provisions apply." (Neufeld Memo at 5.) And on the presumptive denial and burden of proof arguments, the Neufeld Memo makes a reasonable conclusion that because of "the nature and severity of many of the underlying offenses and the intent of the AWA," approvals "should be rare." (Neufeld Memo at 3) (emphasis in original). Sure enough, "Congress denominated no specific standard of proof, but the Adam Walsh Act's instruction that a family-based visa petition should be allowed in such circumstances only where the citizen poses no-risk" suggests a high standard of review. Burbank, 2015 WL 4591643 at *9 (emphasis added). Thus, Counts IV and VII are DISMISSED WITH PREJUDICE.

VII. Arbitrary and Capricious Conduct

Plaintiff has likewise failed to plausibly allege that the USCIS's conduct was arbitrary and capricious. Agency action is deemed to be arbitrary and capricious only where the agency

> has relied on factors which Congress has not
> intended it to consider, entirely failed to
> consider an important aspect of the problem,

18

> offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Karpova v. Snow, 497 F.3d 262, 268 (2d Cir. 2007) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983)). Put differently, an agency need only "set out a satisfactory explanation including a rational connection between the facts found and the choice made." Id.

As noted above, the Aytes and Neufeld Memos make the reasonable conclusion that the default rule is to deny any petitions filed by a citizen convicted of a "specified offense against a minor." See Burbank, 2015 WL 4591643 at *9 (observing that based on the AWA's construction, "the factual showing should be high"). Thus, Count V is DISMISSED WITH PREJUDICE.

VIII. APA Notice and Comment Requirements

Despite Plaintiff's arguments to the contrary, the Aytes and Neufeld Memos are exempt from the APA's notice-and-comment requirements because they are interpretative, not substantive. (See Pl.'s Br. at 27-28.) According to Plaintiff, the USCIS created rule-making procedures without the requisite opportunity for public notice and comment, specifically by: (1) elevating the burden of proof for petitioners to a "beyond a reasonable doubt" standard; (2) requiring proof that a petitioner was not a risk to

the beneficiary's "safety or well-being;" (3) creating a presumptive denial of application; and (4) interpreting the AWA to permit the adjudication of already-filed petitions. (Compl. ¶ 105(a)-(d).)

Generally, an agency must follow notice-and-comment procedures before promulgating rules. 5 U.S.C. § 553(b) & (c). The APA, however, permits an exception for interpretative rules because they "merely 'clarify an existing statute or regulation.'" N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P., 267 F.3d 128, 131 (2d Cir. 2001) (quoting Sweet v. Sheahan, 235 F.3d 80, 90 (2d Cir. 2000)). Substantive rules, by contrast, "'create new law, right[s], or duties'" and thus are subject to notice-and-comment procedures. Id. (quoting Sweet, 235 F.3d at 91).

Here, the pair of memoranda are interpretative because they merely explain the statutory duties outlined in Section 1154. It is reasonable that the USCIS must adjudicate already-filed petitions to determine whether the AWA applies (Neufeld Memo at 5), and imposing a presumptive denial or a high burden of proof is consistent with the construction of the AWA. (Neufeld Memo at 3.) Further, requiring the petitioner to prove that he poses no risk to the "safety or well-being" of the intended beneficiary is a fair interpretation of Section 1154's language. See Burbank, 2015 WL 4591643 at *10. Thus, Count VI is DISMISSED WITH PREJUDICE.

IX.  Leave to Replead

Although the Court's general practice is to grant leave to amend a complaint, "the district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012).  As discussed above, leave to amend would be futile.

CONCLUSION

Defendants' motion to dismiss the Complaint (Docket Entry 12) is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    March 29, 2016
          Central Islip, New York